UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re:

       YANAIRA POLANCO,                        Chapter 13
                                                  Case No. 18-43399-ESS

                             Debtor,

------------------------------------------------------x


MEMORANDUM DECISION ON APPLICATION FOR FINAL ALLOWANCE OF
COMPENSATION AND EXPENSES


*Appearances:*

Linda A Tirelli, Esq.
Tirelli Law Group, LLC
50 Main Street (Suite 1265)
White Plains, NY 10606
  *Attorneys for the Debtor*

Marianne DeRosa, Esq.
  *Chapter 13 Trustee*
Nathan Z. Kaufman, Esq.
  *Staff Attorney*
Office of the Standing Chapter 13 Trustee
100 Jericho Quadrangle (Suite 127)
Jericho, NY 11753
  *Attorneys for the Standing Chapter 13 Trustee*

March 22, 2021

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

### Introduction

Before the Court is the application for final allowance of compensation and expenses of Tirelli Law Group, LLC ("Tirelli"), for legal services provided to Yanaira Polanco, the debtor in this Chapter 13 case (the "Fee Application"). ECF No. 73. Tirelli seeks professional fees of $23,489.50 and reimbursement of actual and necessary expenses of $147.66, incurred over a period of some two and a half years, from the petition date of June 11, 2018, to December 2, 2020, the date of the Fee Application. The fees requested are in addition to a base fee of $6,500 (the "Base Fee") that the firm received from Ms. Polanco before this case was filed.

The Chapter 13 Trustee, Marianne DeRosa (the "Trustee"), opposes the Fee Application on several grounds (the "Opposition"). ECF No. 75. As a threshold matter, she points out that Tirelli did not serve it on Ms. Polanco's creditors, and for this reason alone, it cannot be granted. The Trustee also argues that the professionals' time records are not separated into project categories, as required by this Court's General Order 613. Tirelli promptly addressed these two matters, and service and project category information are now part of the record.

In addition, the Trustee argues that the amounts billed by Tirelli for two tasks – participation in this Court's loss mitigation program to address Ms. Polanco's first mortgage on her home, and an adversary proceeding to Ms. Polanco's second mortgage, are excessive, and outside the "standard fee range" for such matters in this District. The Trustee also points to the Base Fee collected by the firm, and argues that some of the tasks for which compensation is sought should come within that fee.

The issues presented by this Fee Application and the Trustee's objection lie at the intersection of several key considerations in bankruptcy law and practice. Chapter 13 is a

fundamental tool for debtors with regular income to repay their creditors as much as they are able over time.  In many cases, including this one, Chapter 13 permits a debtor to save the family home.  But it is rare that a Chapter 13 debtor can succeed alone, without the assistance of skilled and persistent counsel.  Chapter 13 debtor's counsel, in turn, needs to have some assurance that, eventually, if the circumstances of the case permit, they too will be paid.  And in the context of all of this, the Chapter 13 Trustee has a critical role to play, with a panoply of statutory duties under Bankruptcy Code Section 1302, including to "advise . . . and assist the debtor in performance under the plan."  11 U.S.C. § 1302(b)(4).

This Fee Application calls for the Court to weigh these interests, which are both competing and complementary, and to apply the Bankruptcy Code to assess the Fee Application on its merits and in light of the Trustee's thoughtful concerns.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O), and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and venue is proper before this Court pursuant to 28 U.S.C. § 1409.

### Background

#### *The Filing of this Bankruptcy Case*

On May 7, 2018, Ms. Polanco retained Ms. Tirelli and her firm to assist her in filing a Chapter 13 bankruptcy case, and paid $6,500 in a base fee to the firm.  Just over one month later, on June 11, 2018, Tirelli filed a Chapter 13 bankruptcy case for Ms. Polanco.  As stated in the Fee Application, Ms. Polanco's goals in her bankruptcy case were "to reorganize her financial

situation" and, in particular, to "resolve issues with non-payment and/or foreclosure of TWO (2) mortgages on her home." Fee App. ¶ 3.  Two weeks later, on June 25, 2018, Tirelli filed Schedules A/B, C, G, H, I, and J, and on June 28, 2019, Tirelli filed an amended Schedule J.

On July 3, 2018, Tirelli filed an initial Chapter 13 plan on behalf of Ms. Polanco.  That plan was amended from time to time as the case progressed, and Tirelli filed amended Chapter 13 plans on September 7, 2018, June 28, 2019, and September 8, 2020.

<u>Ms. Polanco's Motion To Extend the Automatic Stay</u>

The present case is not Ms. Polanco's first bankruptcy filing, and her prior filing has consequences for the protection of the automatic stay here.  Specifically, Ms. Polanco filed a previous Chapter 13 bankruptcy case on October 24, 2017.  That case had several deficiencies, and three months later, on January 24, 2018, those deficiencies led to a motion to dismiss by the Trustee.  The Court heard that motion on February 12, 2018, and Ms. Polanco, by her then-counsel, indicated that she did not oppose the dismissal of her case.  Her first case was dismissed by order entered on March 7, 2018.  *See In re Yanaira Polanco*, Case No. 17-45510.  This case, filed by Tirelli, followed on June 11, 2018.

On June 14, 2018, within a few days of filing this second case, Tirelli filed a motion to extend the full protection of the automatic stay for the duration of Ms. Polanco's case under Bankruptcy Code Section 362(c)(3)(B) (the "Motion to Extend Stay").  On July 9, 2018, the Court held a hearing on the Motion to Extend Stay, at which Ms. Polanco, by her counsel Ms. Tirelli, appeared and was heard, and the Court granted the motion and directed Ms. Tirelli to submit a proposed order.  Ms. Tirelli submitted the proposed order and on July 12, 2018, the Court entered an order extending the full protection of the automatic stay until further order of the Court or its expiration by operation of law.

*Ms. Polanco's Participation in Loss Mitigation*

On July 9, 2018, less than a month after this bankruptcy case was filed, Ms. Polanco, by her counsel Tirelli, filed a request to enter into this Court's loss mitigation program with respect to her home located at 25-22 96th Street, East Elmhurst, NY 11369 (the "Property").

On July 30, 2018, the Court entered an order directing Ms. Polanco and the secured creditor, Bayview Loan Services ("Bayview"), to participate in loss mitigation. Over the course of nearly a year and a half, the Court held loss mitigation status conferences, at which Ms. Tirelli, on behalf of Ms. Polanco, and Bayview appeared and were heard. On January 28, 2020, Bayview filed a motion on presentment to approve a loan modification agreement for the Property. No opposition to that motion was filed, and on March 2, 2020, the Court entered an order approving the parties' loan modification agreement with respect to Ms. Polanco's home mortgage.

*The Trustee's First Motion To Dismiss*

On August 21, 2018, the Trustee filed a motion to dismiss this case (the "First Motion to Dismiss") and objection to the confirmation of Ms. Polanco's plan on grounds, among others, that her proposed plan payment was insufficient to pay her secured claims in full as required by Bankruptcy Code Section 1325(a)(5), and that she had not provided the Trustee with certain required documents.

The Court scheduled several hearings on the First Motion to Dismiss, including on September 10, 2018, December 17, 2018, March 25, 2019, and June 3, 2019, and the docket indicates that these hearings were adjourned from time to time without the matter being called or the motion being heard. At the last scheduled hearing date on the motion, on July 22, 2019, the Trustee withdrew the First Motion to Dismiss, indicating, in substance, that the matters

4

addressed in the motion had been resolved.

*Ms. Polanco's Action Against Real Time Solutions, Inc. and RRA CP Opportunity Trust 1*

On September 9, 2018, Ms. Polanco commenced an adversary proceeding (the "RTS Action") against the junior secured creditor Real Time Solutions, Inc. as agent for RRA CP Opportunity Trust 1 (the "Defendants"), stating several counts or claims for relief.  *See Polanco v. Real Time Solutions, Inc.*, Case No. 18-01101, ECF No. 1 (Complaint).  In that action, Ms. Polanco asks the Court to disallow Proof of Claim 3-1, to bar the Defendants from filing an amended claim, to cancel and discharge the alleged arrearages set forth in the proof of claim, to declare the Defendants' asserted security interest to be void, and for an award of fees and expenses, among other relief.  *See Polanco v. Real Time Solutions, Inc.*, Complaint at p. 14.

The Court held an initial pre-trial conference in the RTS Action on November 6, 2018, at which Ms. Polanco, by her counsel Ms. Tirelli, appeared and was heard, and the Defendants did not appear.  From time to time thereafter, the Court scheduled continued pre-trial conferences, and many of these were adjourned on consent of all of the parties, as the parties presumably worked to address the issues identified in the Complaint.

Some time later, on April 14, 2020, and again on June 1, 2020, the Court held continued pre-trial conferences in the RTS Action at which Ms. Polanco, by her counsel Ms. Tirelli, and the Defendants, by their counsel, appeared and were heard.  At the June 1, 2020 conference, the parties advised the Court that they had resolved the dispute, and would submit a proposed consent order for the Court's review and entry.  And on June 26, 2020, the Court entered an order, on consent of the parties, reclassifying the Defendants' Proof of Claim 3-1 as wholly unsecured during the pendency of the Chapter 13 case, and dismissing the RTS Action.  On July 14, 2020, the RTS Action was closed.

*The Trustee's Motion To Object to Ms. Polanco's Cash Exemption*

On October 5, 2018, the Trustee filed a motion to object to Ms. Polanco's claim of a cash exemption on grounds, among others, that she was not entitled to claim a cash exemption because that exemption is not available to a debtor who also claims a New York State homestead exemption under New York Civil Practice Law and Rules Section 5206.  Ms. Polanco did not oppose this motion, and on November 30, 2018, the Court entered an order disallowing and striking the cash exemption from the Schedule C filed in Ms. Polanco's bankruptcy case, without prejudice to her filing a future amendment to that schedule.

*The Trustee's Second Motion To Dismiss*

On September 4, 2020, the Trustee again moved to dismiss Ms. Polanco's bankruptcy case (the "Second Motion to Dismiss") on grounds, among others, that she did not provide the Trustee with certain required documents, including verified monthly operating reports, did not turn over her tax returns and refunds for the 2018 and 2019 tax years, and did not include a "step-up" payment in her proposed Chapter 13 plan.  Notably, by this point in Ms. Polanco's case, she had reached a consensual loan modification with Bayview as to the first lien on her home through the Court's loss mitigation program, and she had reached a consensual reclassification of the second lien on her home in the RTS Action.  That is, Ms. Polanco had substantially accomplished the goals that led her to file her bankruptcy case – to address the "non-payment and/or foreclosure of TWO (2) mortgages on her home."  Fee App. ¶ 3.  The Second Motion to Dismiss was adjourned without a hearing on September 21, 2020, and withdrawn by the Trustee without a hearing on November 9, 2020.

*The Trustee's Third Motion To Dismiss*

On November 20, 2020, the Trustee again moved to dismiss Ms. Polanco's bankruptcy

case (the "Third Motion to Dismiss") on grounds, among others, that she did not turn over her tax refunds for the 2018 and 2019 tax years, did not include a "step-up" payment in her proposed Chapter 13 plan, and did not provide the Trustee with certain required documents, including verified monthly operating reports.  That motion was adjourned without a hearing on December 7, 2020.

On January 11, 2021, the Court held a hearing on the Third Motion to Dismiss, at which the Trustee and Ms. Polanco, by her counsel Ms. Tirelli, appeared and were heard.  At that hearing, Ms. Tirelli stated that Ms. Polanco did not oppose the Trustee's Third Motion to Dismiss, because of the change in her situation and financial circumstances.  Based on the entire record, the Court granted the Trustee's Third Motion to Dismiss and directed the Trustee to settle a proposed order of dismissal on thirty days' notice.

*This Application for Final Allowance of Compensation and Expenses*

On December 2, 2020, Tirelli filed this application for final allowance of compensation and expenses[1] for the period from June 11, 2018 through December 2, 2020.  On January 1, 2021, the Trustee filed the Opposition.  And on January 5, 2021, Tirelli filed an amended statement in support of the Application, in the form of an annotated version of the firm's billing records, as well as an amended notice of hearing and an affidavit of service indicating that all creditors were served.  On January 11, 2021, the Court held a hearing on the Fee Application, at which Ms. Tirelli and the Trustee appeared and were heard, and the Court reserved decision.

*Tirelli's Arguments in Support of the Fee Application*

---

[1]  The Trustee does not object to Tirelli's request for reimbursement of actual and necessary expenses, including expenses associated with obtaining a credit report, postage, mailing, and overnight express mail charges.  These amounts are adequately documented in the Fee Application.  *See* Fee App. Exh. C.  They will be allowed in full and will not be addressed further in this Memorandum Decision.

In support of the Fee Application, Tirelli states that "it is common knowledge in the bankruptcy community that attorneys representing debtor[s] in Chapter 13 cases must work in unusual circumstances with no true guarantee of payment."  Fee App. ¶ 18.  The firm argues that in Chapter 13 cases, just as in Chapter 11 cases, attorneys have no assurance that when they take on the representation of debtors seeking to reorganize, they will receive any additional compensation beyond their pre-petition retainers.  And yet despite this uncertainty, the firm notes, attorneys continue to advocate on behalf of their clients "knowing that they may never be paid for all of their time."  *Id*.  For these and other reasons, Tirelli urges the Court to "make an award of compensation that [involves] the adjustment of the lodestar amount to reflect certain factors."  *Id*.  And here, it urges that these factors should include "the delay in payment, the quality of representation, and the results obtained."  *Id*.  The firm also notes that no fee "beyond the base Chapter 13 fee" has been paid, requested, or awarded for its work for Ms. Polanco.  Fee App. ¶ 25.

Tirelli states that in addition to the "base case preparation of the petition, confirmation hearings, drafting and serving of the chapter 13 plan, all included in the base fee," the firm seeks compensation for 36.2 hours of partner time billed at the hourly rate of $500 and 26.7 hours of paralegal time billed at the hourly rate of $200.  Fee App. ¶ 17.  And it notes that "the number of hours . . . was kept to a minimum because of the high level of expertise and experience" of the firm and its professionals, including Ms. Tirelli.  *Id*.

As to Ms. Tirelli's experience, the firm states that she has twenty-four years of experience in consumer bankruptcy and has been recognized for skill and service by several professional organizations, including the National Association of Consumer Bankruptcy Attorneys.  The firm also notes that Ms. Tirelli regularly provides pro bono representation in the

three divisions of the Southern District of New York's bankruptcy court and in the District of Connecticut, that she is a frequent speaker at professional symposia and conferences, that she is regularly sought out "to assist the media with understanding and reporting on consumer issues in state and federal courts," and that she has been "cited by the Wall Street Journal, New York Times, Washington Post, New York Post, [Los Angeles] Times, American Banker, [Thomson] Reuters, Bloomberg News, CNN, MSNBC, CBS News, Democracy Now and Fox Business News." *Id.*

And the firm notes that Ms. Tirelli's hourly rate of $500 has been "specifically determined to be a fair and reasonable rate for a litigation attorney" in prior cases before this and other judges of this Court and of the bankruptcy court for the Southern District of New York. *Id.*

*The Trustee's Arguments in Opposition to the Fee Application*

The Trustee opposes the Fee Application on several grounds. As threshold matters, the Trustee notes that the Fee Application was not served on creditors, and "unsecured creditors interests will be affected if the Motion is granted." Trustee's Opp. ¶ 7. The Trustee also states that, pursuant to this Court's General Order 613, a fee application must be supported by time records separated by project categories, in order to permit a meaningful review, and requests that the application be supplemented "with time records separated by category." Trustee's Opp. ¶ 11.

The Trustee argues that Tirelli's time billed in connection with the RTS Action did not benefit Ms. Polanco or the bankruptcy estate. She observes that the matter "was settled by a stipulated order reclassifying the junior mortgagee's secured claim as unsecured," and that the Fee Application seeks compensation for 21.1 hours of time spent on this matter. Trustee's Opp. ¶ 12. The Trustee notes that Tirelli incorrectly states that the debt was eliminated, when in fact, it was reclassified from secured to unsecured. As a result, it will be paid pro rata, together with

all of Ms. Polanco's unsecured debt, "if a Chapter 13 Plan is ever confirmed." Trustee's Opp. ¶ 14. And this means that "the anticipated dividend to the other unsecured creditors has been reduced." *Id*.

The Trustee also questions whether Tirelli is entitled to claim credit for negotiating a successful outcome in the action, because "[u]pon information and belief, the junior mortgagee stipulated to this relief because the Debtor was already entitled to it." Trustee's Opp. ¶ 15. In particular, the Trustee points to the fact that Bayview's proof of claim shows a secured claim in the amount of $1,166,003.27, and Ms. Polanco "scheduled the value of her residence at $880,000." Trustee's Opp. ¶ 16. That is, as the Trustee states, "the junior mortgage lien was therefore wholly unsecured and subject to reclassification." *Id*. And in all events, the Trustee asserts, the same relief could have been obtained in a far less expensive way, through a "*Pond* reclassification motion" with a "standard fee range . . . in this District [of] . . . between $750 and $1,250." Trustee's Opp. ¶ 18.

In addition, the Trustee objects to the fees requested by Tirelli for representing Ms. Polanco in this Court's loss mitigation program. The Trustee acknowledges that the firm "obtained a favorable result in loss mitigation." Trustee's Opp. ¶ 20. But here again, the Trustee argues that Tirelli's request for fees for this work is "outside the standard fee range for similar work in this District." *Id*. And the Trustee notes that she cannot determine the appropriate fee, because Tirelli did not separate the time records by category. The Trustee objects to the Fee Application to the extent that fees for the firm's loss mitigation services exceed $4,000. *Id*.

And finally, the Trustee objects to the Fee Application to the extent that it seeks fees for work that should be included in Tirelli's Base Fee, including work to respond to the Trustee's pre-confirmation motions, and work to prepare the motion to extend the automatic stay. That

work, the Trustee argues, should have been encompassed into the work to be done for the flat or Base Fee. The Trustee also notes that the Base Fee "should have included certain basic services required in every Chapter 13 case that were not performed by [Tirelli] in this case." Trustee's Opp. ¶ 24. As one example, the Trustee notes that Ms. Polanco's schedules list the claims of all 19 creditors as "disputed and in an 'unknown' amount." Trustee's Opp. ¶ 25. And the Trustee argues that Tirelli "failed to include information with respect to the Debtor's debts that is required and necessary in every Chapter 13 case." *Id*.

*Tirelli's Supplemental Filing*

Soon after the filing of the Trustee's Opposition, on January 5, 2021, Tirelli filed supplemental documentation in the form of an Amended Statement of time records, in further support of the Fee Application. In the Amended Statement, the firm identifies by category the nature of the work for which fees are sought. The categories indicated are Loss Mitigation, Adversary Proceeding, Motion to Extend Stay, and Trustee Motions. In addition, Tirelli filed an amended notice of hearing and an affidavit of service indicating that all creditors were served.

## **The Applicable Legal Standards**

Bankruptcy Code Section 329 provides that any attorney representing a debtor in, or in connection with, a bankruptcy case, "shall file with the court a statement of the compensation paid or agreed to be paid." 11 U.S.C. § 329(a). The court, in turn, may award "reasonable compensation for actual, necessary services" rendered by an attorney and by any professional or paraprofessional employed by such attorney. 11 U.S.C. § 330(a)(1)(A). And where necessary, the court may direct the return of any compensation payment if it "exceeds the reasonable value of any such services." 11 U.S.C. § 329(b).

In a Chapter 13 case, additional guidance is provided by Bankruptcy Code Section

330(a)(4)(B), as follows:

> In a . . . chapter 13 case . . . the court may allow reasonable compensation to the
> debtor's attorney for representing the interests of the debtor in connection with the
> bankruptcy case based on a consideration of the benefit and necessity of such
> services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B).

"The use of 'may allow' in [Bankruptcy Code Section 330(a)(4)(B)] makes clear that

whether fees are reasonable is a matter of the court's discretion." *In re Moukazis*, 479 B.R. 247,

248 (Bankr. E.D.N.Y. 2012).

Those "other factors," as set forth in Section 330(a)(3), are:

(A)    the time spent on such services;

(B)    the rates charged for such services;

(C)    whether the services were necessary to the administration of, or beneficial
       at the time at which the service was rendered toward the completion of, a
       case under this title;

(D)    whether the services were performed within a reasonable amount of time
       commensurate with the complexity, importance, and nature of the
       problem, issue, or task addressed;

(E)    with respect to a professional person, whether the person is board certified
       or otherwise has demonstrated skill and experience in the bankruptcy
       field; and

(F)    whether the compensation is reasonable based on the customary
       compensation charged by comparably skilled practitioners in cases other
       than cases under this title.

11 U.S.C. § 330(a)(3).

The application of Section 330's factors is not a "matter of mechanically counting up the

factors, to determine reasonableness by a majority tally.  The prevailing method for weighing §

330(a)(3) factors is the 'lodestar' approach." *In re Hanover*, 2020 WL 2554229, at *3 (Bankr.

E.D.N.Y. May 19, 2020).  As this Court has observed, "'[t]he lodestar amount represents the number of hours reasonably worked on a case multiplied by the reasonable hourly rate.'"  *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758, 766 (Bankr. E.D.N.Y. 2005) (quoting *Wells v. Bowen*, 855 F. 2d 37, 43 (2d Cir. 1988)).  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (stating that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate").

Notably, courts recognize these same factors in considering a wide range of fee applications by bankruptcy professionals that provide services in a wide range of bankruptcy cases, from a Chapter 7 trustee's retained counsel to the professionals retained by the debtor in a large Chapter 11 business reorganization.  And Section 330 does not include a list of specified tasks that are covered, nor could it, because the range of "actual, necessary services" varies from situation to situation, case to case, and chapter to chapter.  As one respected commentator notes, "[t]he statute makes no attempt, nor is it possible, to enumerate the spectrum of actual and necessary services that may be performed by a trustee or a professional person."  3 *Collier on Bankruptcy* ¶ 330.03 at p. 330-33 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2020).

Sections 330(a)(3)(A) and 330(a)(3)(D) – the Time Spent on Such Services and Whether the Services Were Performed Within a Reasonable Amount of Time Commensurate with the Nature of the Task.  Two of Section 330(a)(3)'s factors call for the Court to consider how much time was spent on the services, and whether that amount of time was reasonable "commensurate with the complexity, importance, and nature of the problem, issue, or task addressed."  11 U.S.C. § 330(a)(3)(D).  Simply put, these considerations call for the Court to determine how much time

was spent on the particular task for which the professional seeks compensation, and whether that amount of time for that task makes sense.

The reasonableness of the hours expended is a "critical lodestar component." *In re Hanover*, 2020 WL 2554229 at \*3.  Courts must exclude hours that are "excessive, redundant, or otherwise unnecessary" and have "discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *In re Ridgemour Meyer Props., LLC*, 2018 WL 2305765, at \*13 (Bankr. S.D.N.Y. May 18, 2018), *aff'd*, 599 B.R. 215 (S.D.N.Y. 2019), *aff'd*, 791 F. App'x 279 (2d Cir. 2020) (citing *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998)).

While the lens of hindsight is tempting and perhaps inevitable, courts agree that "[i]n evaluating the award of professional fees, courts objectively consider whether the services rendered were reasonably likely to benefit the estate from the perspective of the time when such services were rendered." *In re Value City Holdings, Inc.*, 436 B.R. 300, 305 (Bankr. S.D.N.Y. 2010) (citing *In re Kohl*, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009)).  As this Court has observed, "this supports the salutary objective that attorneys should not be deterred from undertaking the representation of debtors in bankruptcy cases, including cases that may pose significant challenges and an uncertain outcome, due to a risk of inadequate compensation." *In re Korea Chosun Daily Times, Inc.*, 337 B.R. at 767 (citing *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996)).

And in this context, "'[b]ankruptcy courts enjoy wide discretion in determining reasonable fee awards.'" *In re Cenargo Int'l, PLC*, 294 B.R. 571, 596 (Bankr. S.D.N.Y. 2003) (quoting *In re Raytech Corp.*, 241 B.R. 785, 788 (D. Conn. 1999)).  In exercising this discretion, the court may call upon its knowledge and experience in similar matters, and in the case at hand.

As the Second Circuit noted, "the Bankruptcy Court did not abuse its discretion in approving as reasonable [the firm's] final fee application" because the judge "presided over th[e] bankruptcy for its duration and had the opportunity to evaluate first-hand both the quality of [the firm's] performance and the contributions made by the firm." *Bernheim v. Damon & Morey, LLP*, 2007 WL 1858292, at *2 (2d Cir. June 28, 2007).

This discretion may call for careful attention to the record, including the billing records that support the professional's application. As the Second Circuit has also observed, it may be necessary to "carefully and independently review[] the attorney time and expense reports to ensure that they were reasonable and commensurate with the tasks undertaken." *In re Hoti Enters.*, 605 F. App'x 67, 68 (2d Cir. 2015).

Sections 330(a)(3)(B) and 330(a)(3)(F) – the Rates Charged for Such Services and Whether the Compensation Is Reasonable Based on Customary Compensation in Non-Bankruptcy Matters. Section 330's factors also call for the Court to consider the professional's rate, and to view it not only in the context of rates charged for bankruptcy matters but also in the context of "customary compensation charged by comparably skilled practitioners in cases other than cases under [the Bankruptcy Code]." 11 U.S.C. § 330(a)(3)(F). And of course, the reasonableness of the professional's rate is also important in undertaking a lodestar review.

As this and other courts have observed, the reasonableness of the hourly rate is determined by considering "that fee which is customarily charged in the local community by someone who possesses similar skill, experience, expertise, stature and reputation who is faced with similarly novel and complex issues and who procures comparable results." *In re Korea Chosun Daily Times, Inc.*, 337 B.R. at 767 (quotations and citations omitted).

Viewed another way, this calls for the Court to consider "prevailing market rates for attorneys with comparable skill and standing in the pertinent legal community." *In re Ridgemour Meyer Props., LLC*, 2018 WL 2305765 at *13 (citing *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 190 (2d Cir. 2000)).  And as the Second Circuit has noted, the court's review may well also encompass an assessment of "the hourly rates of competitors in the marketplace." *In re Hoti Enters.*, 605 F. App'x at 68.

Section 330(a)(3)(C) – Whether the Services Were Necessary and Beneficial to the Debtor or the Estate.  Another key factor in the determination of a professional's fee is the benefit of the representation to the debtor or the estate.  Here too, it is important to note that as with the question of the reasonableness of the time expended, courts do not determine necessity and benefit with the advantage of hindsight.  As one bankruptcy court explained, "[a] decision reasonable at first may turn out wrong in the end.  The test is an objective one, and considers 'what services a reasonable lawyer or legal firm would have performed in the same circumstances.'" *In re CCT Commc'ns, Inc.*, 2010 WL 3386947, at *5 (Bankr. S.D.N.Y. Aug. 24, 2010) (quoting *In re Ames Dep't Stores, Inc.*, 76 F.3d at 72).  *See In re Brous*, 370 B.R. 563, 574 (Bankr. S.D.N.Y. 2007) (finding that "[a]lthough the outcome was disappointing, the services were nonetheless reasonable at the time that they were rendered.")

For these same reasons, the success or failure of the particular claim or position is not the sole determinant of whether the services in question were ultimately "necessary and beneficial" to the debtor or the debtor's estate.  As one court put it, legal services that "are performed well, with due adherence to an attorneys' duties and in the good faith litigation . . . are 'necessary' and 'beneficial' services for which compensation is owed, regardless of whether the client won or lost the underlying case." *In re Haimil Realty Corp.*, 579 B.R. 19, 27 (Bankr. S.D.N.Y. 2017)

16

(citing *Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am.* (*In re JLM*), 210 B.R. 19, 24, 27

(B.A.P. 2d Cir. 1997)).

That is, this factor calls for the court to consider "'what services a reasonable lawyer or

legal firm would have performed in the same circumstances.'" *In re Haimil Realty Corp.*, 579

B.R. at 27 (quoting *In re Keene Corp.*, 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997)).  At the same

time, "'[a]n attorney should only proceed with a legal service if the potential benefit of the

service, which takes into consideration the chances of success, outweighs the cost.'"  *In re*

*Haimil Realty Corp.*, 579 B.R. at 27 (quoting *In re Angelika Films 57th Inc.*, 227 B.R. 29, 42

(Bankr. S.D.N.Y. 1998)).

## Discussion

As this Court has observed:

> Every bankruptcy case benefits from the services of bankruptcy professionals.
> The Bankruptcy Code permits many of these professionals to be compensated
> with special administrative priority from the assets of the debtor's estate.  This
> administrative priority encourages professionals, including counsel, to take on the
> responsibility of representing a company in financial difficulties and steering it
> through the Chapter 11 process to a successful reorganization.

*In re S & Y Enterprises, LLC*, 480 B.R. 452, 455 (Bankr. E.D.N.Y. 2012).  Those benefits are

central to the reorganization of an entity in a Chapter 11 case – and they may be just as

important, and even central, to the success of an individual debtor's efforts to reorganize their

financial circumstances in a Chapter 13 case.

Bankruptcy Code Section 330(a)(3) and the many cases that have interpreted and applied

it provide the template for considering an award of compensation for a debtor's attorney in a

Chapter 13 case.  And courts agree that in either chapter, these considerations often inform the

calculation of a reasonable fee using the lodestar approach, representing "'the number of hours

reasonably worked on a case multiplied by the reasonable hourly rate.'"  *In re Korea Chosun*

*Daily Times, Inc.*, 337 B.R. at 766 (quoting *Wells*, 855 F.2d at 43).  *See In re Nicholas*, 496 B.R. 69, 74 (Bankr. E.D.N.Y. 2011) (stating that "[w]hen attorney's fees are awarded under the Court's inherent powers, courts use the lodestar approach").

This calls for the Court to consider three questions – first, whether the time spent by the professional was reasonable and proportionate to the complexity of the task at hand; second, whether the rate charged for the professional's time is reasonable, including in light of what would be customary in both bankruptcy and non-bankruptcy matters; and third, whether the services provided by the professional were necessary or beneficial to the debtor at the time that they were performed.  The Court considers these questions in turn.

### *Whether the Time Spent by Tirelli on Services to Ms. Polanco Was Reasonable and Proportionate to the Issues in the Case*

The first question for the Court to address is whether the time spent by Tirelli was reasonable and proportionate to the issues in the case.

Tirelli seeks compensation for services in Ms. Polanco's Chapter 13 case including her participation in loss mitigation with Bayview concerning Ms. Polanco's home mortgage, the RTS Action concerning a second mortgage on Ms. Polanco's home, Ms. Polanco's motion to extend the full protection of the automatic stay in this second-filed case within a year, and responding to the Trustee's motions to dismiss and to strike the cash exemption claimed by Ms. Polanco.

One piece of the picture in assessing whether the time spent was reasonable is the records that were maintained by the professional at the time the work was performed.  Here, the Trustee correctly points out that pursuant to this Court's General Order 613, a fee application must be supported by time records separated by project categories, in order to permit a meaningful review by interested parties and the Court.  Bankruptcy Rule 2016 similarly requires that an

attorney's fee application contain a "detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."  Fed. R. Bankr. P. 2016(a).  The Trustee also notes that a meaningful review requires notice, and notice requires service on the creditors – and here too, the Trustee is correct.

Tirelli addressed each of these concerns with its supplemental filing of an amended and annotated statement of time records, and by serving the Fee Application, as supplemented, on all creditors and parties in interest.  The Court observes that if these matters had not been addressed, they could well have been insurmountable obstacles to an award of fees.

Another piece of the picture in assessing whether the time spent was reasonable is, of course, the amount of time recorded and the particular task.  And here the burden is on Tirelli, as the applicant.  As one court stated, "[i]n all cases, the applicant bears the burden of proving the reasonableness of 'each dollar for each hour above zero' to be paid from a bankruptcy estate."  *In re Schuman*, 2013 WL 1195279, at *5 (Bankr. N.D.N.Y. Mar. 22, 2013) (quoting *In re Wesseldine*, 434 B.R. 31, 33 n.1 (Bankr. N.D.N.Y. 2010)).  Bankruptcy Rule 2016 requires that the attorney's fee application contain a "detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."  Fed. R. Bankr. P. 2016(a).

Here, Tirelli seeks compensation for a total of 62.9 hours of professional time, spanning a period of some twenty-seven months, from June 14, 2018, to September 21, 2020.  Of these hours, more than half, or 36.2 hours, were recorded by Ms. Tirelli, and the balance, or 26.7 hours, was recorded by paralegals working under her supervision.  The firm's records indicate that the professionals recorded their time with reasonable and appropriate precision.  In particular, Ms. Tirelli's time was recorded in 41 discrete entries, nearly all on different days, yielding an average recorded time entry of about 0.9 hours per entry.  And the paralegals' time

was recorded in 89 discrete entries, again nearly all on different days, for an average recorded time entry of just 0.3 hours per entry.  At a minimum, this confirms that Tirelli's contemporaneous billing records provide sufficient detail, on a professional-by-professional and day-by-day basis, to understand and assess the nature of the work that was done.

In addition, based on the task designations provided by Tirelli in the Amended Statement of time records, much of the time for which Tirelli seeks compensation was recorded in connection with the firm's efforts in support of Ms. Polanco's participation in this Court's loss mitigation program.  That time includes 12.4 hours of Ms. Tirelli's time recorded in 17 entries over a period of more than two years, from August 16, 2018 to September 21, 2020, and all of the time recorded by paralegals, or 26.7 hours, from July 5, 2018 to March 2, 2020.

The Trustee argues, in substance, that Tirelli's charges to represent Ms. Polanco in loss mitigation are excessive because they are "outside the standard fee range for similar work in this District."  Trustee's Opp. ¶ 20.  And the Trustee suggests that to the extent that Tirelli's fee request for loss mitigation exceeds $4,000, it would be outside that "standard" range.  *Id*.  As an illustration, and at the indicated rates, this sum would cover, for example, four hours of Ms. Tirelli's time at $500 per hour and ten hours of paralegal time at $200 per hour.  And here, the firm's billing records reflect 12.4 hours of Ms. Tirelli's time, for charges of $6,200, and 26.7 hours of paralegal time, for charges of $5,340, for total charges of $11,540.

This Court first adopted its loss mitigation program in December 2009 as a pilot project. As adopted, it is a "uniform, comprehensive, court-supervised . . . program . . . to facilitate consensual resolutions for individual debtors whose residential real property is at risk of loss to foreclosure."  EDNY General Order No. 676 (April 1, 2019), amending EDNY General Order No. 543 (December 8, 2009).  The program "has helped avoid the need for various types of

bankruptcy litigation, reduced costs to debtors and secured creditors, and enabled debtors to reorganize or otherwise address their most significant debts and assets." *Id*. It has proved to be remarkably successful in facilitating an exchange of information between eligible homeowners, on the one hand, and secured lenders or mortgagees, on the other, in a court-supervised process, to determine whether the parties can reach an agreement on a consensual loan modification, loan refinance, forbearance, short sale, surrender of the property in full satisfaction of the mortgage debt, or some other mutually beneficial outcome.

The outcome of loss mitigation can be hard to predict. Sometimes, the debtor has been in default for one or two years; other times the debtor has been in default for ten years or more. And sometimes, situations that seemed quite unlikely to lead to a consensual modification manage to go down that path – often because of the huge efforts of the debtor, the lender, and their counsel. When this occurs, it is a good result for all concerned. And even when agreement on a modified mortgage does not occur, the loss mitigation process can lead to a productive engagement between the homeowner and the lender and to other accords.

The timeline for loss mitigation can likewise be hard to predict. Successful loss mitigation efforts can happen in just a few months – and sometimes they can take a few years. In some situations, it takes many months and additional rounds of submissions to ascertain whether acceptable modified mortgage terms can be offered to the debtor and their family, and whether adequate income is available to make the payments.

In such circumstances, it may well be that a fixed fee, as opposed to an hourly rate, will be desirable for the attorney and the client. But when the timeline of a particular case can vary from weeks or a few months to two years or more, this Court declines the invitation to impose a cap or limitation based on a "standard fee" of $4,000.

Here, Ms. Polanco, by her counsel Tirelli, filed a request to enter into this Court's loss mitigation program with respect to her home less than a month after this case was filed, on July 9, 2018.  The loss mitigation process extended over the course of twenty-one months, including nearly eighteen months of loss mitigation status conferences.  Ultimately, loss mitigation was successful, and on March 2, 2020, the Court entered an order approving the parties' loan modification agreement with respect to Ms. Polanco's home mortgage.

Viewed in the context of these circumstances, the Court is satisfied that Tirelli's time billed for loss mitigation is substantially reasonable and proportionate to the issues in the case, for several reasons.  First, viewed in the aggregate, and taking account of the period of time that the loss mitigation process was underway, it comes within a range of reasonableness for the amount and nature of work that would be required for the firm adequately to represent Ms. Polanco in this process.  Second, it reflects a reasonable and appropriate allocation of tasks between Ms. Tirelli, the attorney responsible for the matter, and the firm's paralegal staff.  As the firm's records show, Ms. Tirelli participated in many substantive communications with Ms. Polanco and made several court appearances, while the firm's paralegal staff attended to more routine and administrative matters.  And finally, while this consideration is not dispositive, Ms. Polanco – and Bayview, the lender – obtained an excellent result, in the form of a consensual modified mortgage.  To be sure, that took many months – in the range of two years – but this is not outside the reasonable boundaries of a loss mitigation effort by a determined debtor and a secured creditor that is participating in good faith in the process.

At the same time, a close review of the billing records also suggests that certain time entries appear to be incorrect.  In particular, Ms. Tirelli recorded one hour of time for court appearances for loss mitigation status conferences and pre-trial conferences in the RTS Action

22

on April 25, 2019, June 13, 2019, July 25, 2019, and February 10, 2020.  On each of these dates, hearings in Ms. Polanco's case were scheduled but adjourned without hearing, as confirmed by letters of adjournment filed at least one day in advance of the scheduled hearing.  *See* ECF Nos. 42 (April 25, 2019 Hrg.); 45 (June 13, 2019 Hrg.); 49 (July 25, 2019 Hrg.); 56 (February 10, 2020).  *See also Polanco v. Real Time Solutions, Inc.*, Case No. 19-01101, ECF Nos. 8 (April 25, 2019 Hrg.); 9 (June 13, 2019 Hrg.); 10 (July 25, 2019 Hrg.).  As a consequence, it is appropriate to reduce Ms. Tirelli's time charges by four hours, or $2,000.

In addition, Ms. Tirelli recorded six-tenths of an hour for a court appearance on September 21, 2020, for a loss mitigation status conference and pre-trial conference in the RTS Action.  But by that date, the loss mitigation process and the RTS Action had each been concluded.  And a hearing on the confirmation of Ms. Polanco's plan was scheduled, but the case docket indicates that it was adjourned without a hearing.  As a consequence, it is appropriate to reduce the time charges by six-tenths of an hour, or $300.

The Court next considers whether the time spent by Tirelli on the RTS Action was reasonable and proportionate.  The Trustee argues, in substance, that the time billed by the firm to represent Ms. Polanco in this matter is excessive because the same relief – "reclassifying the junior mortgagee's secured claim as unsecured" – could have been obtained by less expensive means, including by the filing of a motion rather than an adversary proceeding.  Trustee's Opp. ¶ 12.  The Trustee points to the Second Circuit's decision in *Pond v. Farm Specialist Realty* (*In re Pond*), 252 F.3d 122 (2d Cir. 2001), where the court found that "wholly unsecured junior liens may be reclassified as unsecured," and to decisions of bankruptcy courts in this District and elsewhere in the Circuit finding that "'the proper way to obtain such relief . . . is to file a motion.'"  Trustee's Opp. ¶ 17 (quoting *Orkwis v. MERS* (*In re Orkwis*), 457 B.R. 243, 245

(Bankr. E.D.N.Y. 2011)).  And the Trustee argues that "the standard fee range for a *Pond* reclassification motion in this District is between \$750 and \$1,250."  Trustee's Opp. ¶ 18.

Here, Ms. Polanco, by her counsel Tirelli, commenced the RTS Action on September 9, 2018, within three months after this bankruptcy case was filed.  As stated in the Fee Application, Ms. Tirelli "reviewed the proof of claim filed by the second lien holder and discovered the same lacked a proper chain of title.  Because the issue was not resolved after contacting the creditor, [she] was caused to commence litigation by way of [an] Adversary Proceeding."  Fee App. ¶ 8.

In that action, Ms. Polanco sought a broad range of relief against the junior secured creditor Real Time Solutions, Inc. as agent for RRA CP Opportunity Trust 1, including the disallowance of their proof of claim, a bar to the filing of an amended claim, the cancellation and discharge of the alleged arrearages set forth in the proof of claim, a declaration that the Defendants' asserted security interest was void, and an award of fees and expenses, among other relief.  That is, the relief sought at the outset of the action arose from, among other matters, an apparent defect in the creditor's chain of title, and significantly exceeded the reclassification of the Defendants' junior lien from secured to unsecured.  As the record of that case reflects, the Court held pre-trial conferences from time to time at which the parties, by their counsel, appeared and were heard, and the action was settled by the parties with an agreement to reclassify the Defendants' proof of claim as wholly unsecured during the pendency of the Chapter 13 case.  On June 26, 2020, the Court entered an order approving the parties' settlement and dismissing the RTS Action.

Viewed another way, at the outset of the adversary proceeding, Ms. Polanco sought several forms of relief.  The parties reached a settlement that yielded what well may have been the central relief that she sought – the reclassification of the Defendants' lien.  But the fact that

the parties reached an agreement on relief that would mirror the relief available in a *Pond* reclassification motion does not alter the fact that a significantly wider scope of relief was originally sought.  To be sure, Ms. Polanco did not ultimately pursue that relief – and chose to settle her claims.  But it would be perverse indeed for the Court to apply the scope of a prudent settlement to cap the fees to be awarded for bringing an adversary proceeding that sought considerably broader relief.  Here again, the Court declines the invitation to impose a cap or limitation based on a "standard fee" of "between $750 and $1,250."

For these reasons, the Court is satisfied that Tirelli's time billed in connection with the RTS Action is substantially reasonable and proportionate to the issues in the case.  This adversary proceeding was on the Court's docket for nearly two years, from September 2018 to July 2020.  A review of the time entries shows that the bulk of the time recorded occurred in connection with researching and preparing the complaint, or some 6.4 hours, and negotiating and drafting the settlement agreement, or seven hours.  In addition, the time entries confirm that the work that was done required the attention of a lawyer, not a paralegal.  This includes drafting and revising the Complaint, researching issues in connection with the Complaint, communicating and negotiating with the Defendants' in-house counsel, appearances at pre-trial status conferences, and negotiating, drafting, and revising the settlement agreement.

At the same time, and as noted above, it also appears that certain time entries may require adjustment.  These include time entries for court appearances on dates that pre-trial conferences in the RTS Action were scheduled but adjourned without hearing, on April 25, 2019, June 13, 2019, July 25, 2019, and February 10, 2020, as confirmed by correspondence filed by Tirelli in advance of the hearing.  These also include a time entry for a court appearance on September 21, 2020, after the RTS Action had been concluded.  And as also noted above, it is appropriate to

disallow the time recorded for those dates.

Tirelli seeks compensation for two additional categories of work in Ms. Polanco's bankruptcy case. These are the motion to extend the full protection of the automatic stay in this case, which is Ms. Polanco's second-filed case within a year, and responding to the Trustee's motions to dismiss and to strike the cash exemption claimed by Ms. Polanco.

The Trustee argues, in substance, that it is not reasonable for Tirelli to seek compensation beyond that received by the firm in the Base Fee for these matters because "responses to pre-confirmation motions by the Trustee are part and parcel to the work necessary to confirm a plan." Trustee Opp. ¶ 22. And the Trustee states that the firm's work on the motion to extend the automatic stay "should have been built [] into the flat fee." Trustee Opp. ¶ 23.

Here, Tirelli seeks compensation for one hour of attorney time in connection with the motion to extend the automatic stay. This time was billed on June 14, 2018, to draft the motion to extend the automatic stay, just a few days after this bankruptcy case was filed, and the motion was filed that same day. No other time appears to have been recorded in connection with this motion, by Ms. Tirelli or by a paralegal. The motion was heard and granted by the Court on July 9, 2018. A proposed order was submitted by the firm and entered by the Court July 12, 2018.

Taken as a whole, the Court is satisfied that one hour of attorney time is reasonable for the firm's work on the motion to extend the automatic stay in this second-filed case.

The Court is also satisfied that it was reasonable not to include the time associated with such a motion in the Base Fee. These motions are required only in a small fraction of cases – those filed within a year of the pendency of a prior case that was dismissed. As reflected in the "Contract for Chapter 13 Bankruptcy Services" between Tirelli and Ms. Polanco, the services that come within the Base Fee are "those normally contemplated for a Chapter 13 case." Fee

App. Exh. B (Contract) at 1.  And the list of those services is long indeed, encompassing 27 discrete tasks and areas of responsibility, from "[c]ontacting creditors pre-petition regarding Letters of Representation" to "[p]roviding you with answers to frequently asked questions and other routine communications with you."  Fee App. Exh. B (Contract) at 1, 2.

If a motion to extend the full protection of the automatic stay in a second-filed case, or any other matter that will arise in only a small subset of cases, were included in the services that come within a fixed or base fee, then countless prospective debtors could well be required to pay a somewhat higher fee, in order to accommodate those few cases where such a motion is necessary.  That is not to say that it *could* not be included, in the appropriate circumstances, based on the fee agreement between the attorney and the client.  But here too, the Court declines the invitation to impose that as a requirement on a Chapter 13 fee agreement that includes a fixed or base fee.

In addition, Tirelli seeks compensation for 1.6 hours of attorney time in connection with responding to the Trustee's motions, including Ms. Tirelli's court appearance on September 10, 2018 on the Trustee's First Motion to Dismiss (one hour) and Ms. Tirelli's review and analysis of the motion to strike Ms. Polanco's cash exemption on October 5, 2018 (six-tenths of an hour). Hearings on the Trustee's motion to dismiss were held and adjourned from time to time, and the Trustee withdrew the motion on July 22, 2019.  And the Trustee's motion to strike Ms. Polanco's cash exemption led to the entry of an order, on consent, disallowing and striking the cash exemption from Ms. Polanco's Schedule C filed in her bankruptcy case.

Here too, taken as a whole, the Court is satisfied that one hour of attorney time is reasonable for the firm's work in response to the Trustee's First Motion to Dismiss, and six-tenths of an hour of attorney time is reasonable for the firm's work in response to the Trustee's

motion to object to Ms. Polanco's cash objection.  In each circumstance, the amounts of time recorded were modest, and the record suggests that the matters were handled efficiently and effectively, and in a manner that was consistent with the progress of the bankruptcy case.

In addition, the Court is satisfied that it was reasonable not to include the time associated with these motions in the Base Fee.  These motions are not made in every case, or even in most cases.  If responding to a trustee's motion to dismiss or to strike a cash exemption, or any other pre-confirmation motion by the trustee, were required to come within a base or fixed fee, then as noted above, every prospective debtor could well be required to pay a somewhat higher fee, in order to accommodate those cases where such a motion is made.  Such an agreement might make sense in a particular retention, between a prospective debtor and their attorney.  But again, the Court will not impose that as a requirement on a Chapter 13 fee agreement that includes a fixed or base fee.

For these reasons, and based on the entire record, the Court is satisfied that subject to reductions for time recorded on April 25, 2019, June 13, 2019, July 25, 2019, February 10, 2020, and September 21, 2020, totaling 4.6 hours and $2,300 in fees, Tirelli has shown that the time spent by the professionals was reasonable and proportionate to the complexity of the tasks that were undertaken.

*Whether the Rates Charged by Tirelli for the Professionals' Time Were Reasonable*

The next question that the Court considers is whether the rates charged by Tirelli for the time of its professionals are reasonable, including in light of what would be customary in both bankruptcy and non-bankruptcy matters.

In support of these rates, the firm cites Ms. Tirelli's twenty-four years of experience in consumer bankruptcy law, her many awards and recognitions, and her "commit[ment] to

consumer issues and [recognition as a] go-to attorney whenever the need for a pro-bono counsel in SDNY arises." Fee App. ¶ 17. The firm notes that Ms. Tirelli's $500 hourly rate has previously been approved in matters before this Court and been "specifically determined to be a fair and reasonable rate for a litigation attorney" by bankruptcy judges in the Eastern and Southern Districts of New York. *Id*. The firm also points to her recognition as a frequent speaker and author and attendance at "symposiums and conventions across the country" for organizations including the American Bankruptcy Institute, the National Consumer Law Center, the Neighborhood Assistance Corporation of America, the National Association of Consumer Bankruptcy Attorneys, the Hudson Valley Bankruptcy Bar Association, and the New York City Bar Association, among many other entities and organizations. *Id*. And it notes that Ms. Tirelli is also often called upon by the media in "understanding and reporting on consumer issues in state and federal courts," and has been cited by the "Wall Street Journal, New York Times, Washington Post, New York Post, [Los Angeles] Times, American Banker, [Thomson] Reuters, Bloomberg News, CNN, MSNBC, CBS News, Democracy Now and Fox Business News," among many other media outlets. *Id*.

Here, Tirelli charged an hourly rate of $500 for Ms. Tirelli's time and an hourly rate of $200 for its paralegals' time. These rates did not change over a period of more than two years that this case has been pending. In addition, Ms. Tirelli is a senior and experienced bankruptcy and litigation attorney, and she brought "a high level of expertise and experience . . . to this matter." *Id*. This hourly rate has been approved by this Court and many others, and is consistent with hourly rates that are regularly approved in this District and the Southern District of New York. And the Trustee has not disputed the reasonableness of these professionals' rates.

For these reasons, and based on the entire record, the Court is satisfied that Tirelli has

shown that the hourly rates charged for the professionals' time, including $500 for attorney time and $200 for paralegal time, are reasonable in light of what would be customary in both bankruptcy and non-bankruptcy matters.

*Whether the Services Provided by Tirelli Were Necessary or Beneficial to Ms. Polanco at the Time They Were Performed*

The third question that the Court considers is whether the services provided by Tirelli were necessary or beneficial to Ms. Polanco at the time they were performed.

Even if a reasonable amount of time was invested in the task, and a reasonable rate was charged for the time, Bankruptcy Code Section 330(a)(3)(C) directs a court to undertake a kind of "reality check" to assure that when the professional provided the services, it made sense to do so. As the statutory language makes clear, the relevant time frame is "the time at which the service was rendered." 11 U.S.C. § 330(a)(3)(C). For these reasons, hindsight is not dispositive – that is, "[a] decision reasonable at first may turn out wrong in the end." *In re CCT Commc'ns, Inc.*, 2010 WL 3386947, at *5. But it is also fair to say that a good result may well confirm that the services were, in fact, necessary or beneficial to the debtor at the time they were performed.

The Trustee argues, in substance, that Tirelli's work in the RTS Action did not benefit Ms. Polanco or her estate. The Trustee points out that "[t]he claim was reclassified, not expunged, and will be paid pro rata if a Chapter 13 Plan is ever confirmed. As a result, the anticipated dividend to the other unsecured creditors has been reduced." Trustee's Opp. ¶ 14.

The Trustee also disputes that any benefit was achieved as a consequence of Tirelli's negotiation of a settlement in the RTS Action which, Tirelli asserts, "saved the estate the cost of further litigation, depositions, discovery, expert witnesses etc." Fee App. ¶ 11. Instead, the Trustee states, "[u]pon information and belief, the junior mortgagee stipulated to this relief because [Ms. Polanco] was already entitled to it." Trustee's Opp. ¶ 15.

When this bankruptcy case was filed, as Tirelli explains, Ms. Polanco sought "to reorganize her financial situation and resolve issues with non-payment and/or foreclosure of TWO (2) mortgages on her home." Fee App. ¶ 3. Specifically, she sought "to resolve a foreclosure case pending in the state court by the mortgage loan creditor with a first lien on [her] primary residence and to further resolve a disputed second mortgage lien." Fee App. ¶ 4. Within less than a month, Tirelli filed a request to enter into loss mitigation to address Bayview's first mortgage lien, and less than three months later, Tirelli commenced the RTS Action to address the disputed second lien.

Each of these steps proved to be productive for Ms. Polanco. The parties' loss mitigation efforts led to a court-approved consensual mortgage modification. And the RTS Action was settled with a court-approved consensual reclassification of the second lien, from secured to unsecured.

The Trustee is correct to note that in a Chapter 13 plan, Ms. Polanco's unsecured creditors would receive a reduced dividend as a consequence of the reclassification. But that is a consequence of the nature of the reclassified claim's status as unsecured debt and simply reflects the accurate classification and treatment of the debt – not the absence of a benefit to Ms. Polanco or her estate. And similarly, while perhaps it now seems clear that the Defendants in the RTS Action should have stipulated to the reclassification of their claim "because [Ms. Polanco] was already entitled to it," it is also clear that the claim was filed as a secured claim, and was not withdrawn or amended until the settlement agreement was reached.

That is, as a consequence of the services provided by Tirelli, Ms. Polanco's objectives in filing this Chapter 13 case – to reorganize her financial situation and to address two mortgages on her home that were in default – were accomplished. And plainly, this meets the threshold of

"necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of" this case.  11 U.S.C. § 330(a)(3)(C).

For these reasons, and based on the entire record, the Court is satisfied that Tirelli has shown that the services that it provided to Ms. Polanco were necessary and beneficial to her at the time that they were performed.

*          *          *

As a final note, and as this Court has observed, "[o]ne of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a 'fresh start.'" *McKenzie-Gilyard v. HSBC Bank Nevada, N.A.* (*In re McKenzie-Gilyard*), 388 B.R. 474, 480 (Bankr. E.D.N.Y. 2007) (citing *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007)).  But it is the rare situation where a Chapter 13 debtor can achieve that "fresh start" without the assistance of an attorney.  As other courts have noted, "debtors' likelihood of success in the Chapter 13 arena is far greater if they are represented by counsel," and "attorneys should be justly compensated for their services and not limited by a flat fee in complex or difficult cases."  *In re Wesseldine*, 434 B.R. at 40.  And as this Court has observed in the related context of professional fee applications in Chapter 11 reorganizations, "attorneys should not be deterred from undertaking the representation of debtors in bankruptcy cases, including cases that may pose significant challenges and an uncertain outcome, due to a risk of inadequate compensation."  *In re Korea Chosun Daily Times, Inc.*, 337 B.R. at 767 (citing *In re Ames Dep't Stores, Inc.*, 76 F.3d at 72).  Not every Chapter 13 case succeeds, and not every measure of success is the same.  But where the case does succeed, the funds are available, and the applicable standards are met, it is appropriate and fitting that an award of compensation should be made.

## <u>Conclusion</u>

For the reasons stated herein, and based upon the entire record, the Court grants the Application for Final Allowance of Compensation and Expenses of Tirelli in part.  The Court finds and concludes that Tirelli has shown that it is entitled to a final allowance of compensation, in the amount of $21,337.16, representing the amount requested of $23,637.16, reduced by the amount disallowed of $2,300.  The Court further finds and concludes that Tirelli has shown that it is entitled to a final allowance of reimbursement of actual and necessary expenses in the amount of $147.66.  An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**March 22, 2021**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**